1  ALEX G. TSE (CABN 152348)
   United States Attorney
2

3  BARBARA VALLIERE (DCBN 439353)
   Chief, Criminal Division
4

5  RAVI T. NARAYAN (IABN AT0011948)
   JONATHAN U. LEE (CABN 148792)
6  Assistant United States Attorneys

7       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
8       Telephone: (415) 436-7369
        Fax: (415) 436-7234
9       Email: Ravi.Narayan@usdoj.gov

10 Attorneys for United States of America

11

12                    UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                         OAKLAND DIVISION

15

16 UNITED STATES OF AMERICA,          )  CASE NO. 17-CR-462-JSW
                                      )
17              Plaintiff,            )  **GOVERNMENT'S TRIAL BRIEF**
                                      )
18        v.                          )
                                      )
19 JOB TORRES HERNANDEZ,              )  Honorable Jeffrey S. White
                                      )  Pretrial Conference Date:  November 5, 2018
20              Defendant.            )  Time:  2:00 p.m.
                                      )
21                                    )
                                      )
22 _____)

23                          **INTRODUCTION**

24        Trial in this matter is set for November 26, 2018.  The government anticipates that certain

25 evidentiary and legal issues may arise at trial and therefore provides briefing on the following subjects:

26 (1) the scope of admissible victim testimony; and (2) the admissibility of defendant's prior convictions.

27 //

28

**FACTUAL BACKGROUND**

To provide appropriate context for the legal issues discussed below, the government begins by setting forth a summary of some of the testimony and evidence it anticipates presenting.

During the time period alleged in the indictment, defendant operated construction companies in the Bay Area.  From about May 2015 through about January 2016, one of defendant's companies performed construction work in San Francisco as part of a contract with Marriott.  From about February 2017 through about August 2017, one of defendant's companies performed construction work in San Jose as part of a contract with Full Power Properties.

During this time, much of defendant's work force did not have legal status to work or live in the United States.  The government anticipates calling approximately eleven victims of defendant's offense to testify, each of whom worked for defendant and did not have legal immigration status.  The government will elicit testimony from these victims about: how they began working for defendant; the promises defendant made to them regarding wages and housing; the wages and housing they actually received from defendant; the conditions in which they lived and the hours they worked; defendant's statements regarding their immigration status; and defendant's statements and behaviors when they confronted him about his failure to provide payment.

Several of these victims began working for defendant after responding to a work advertisement that defendant posted in a Tijuana newspaper.  After calling the number on the advertisement, the victims were told to cross the border at San Ysidro in San Diego, California.  After crossing the border, an individual working for defendant picked up the victims and drove them to defendant's warehouse in Hayward, California.

Once the workers arrived, defendant promised the victims certain wages and living arrangements.  Some victims describe that when they arrived, defendant also promised that he would help them gain legal immigration status.  Defendant then failed to follow through on these promises.  Some victims describe working for up to three months at a time without receiving any payment from defendant.  One victim describes receiving only $8000 of payment for 18 months of full-time work, a small percentage of both minimum wage and what he was promised.  Another victim describes not

1   eating for three days because he had run out of money for food and defendant was not paying him.

2       A number of victims also describe the unsuitable living conditions in the warehouse where

3   defendant housed them.  Upwards of twenty workers at a time slept on makeshift beds in the attic of the

4   warehouse.  The workers had access to a single, unsanitary bathroom.  Often, this bathroom did not have

5   running water, and the victims had to collect water in a bucket to operate the toilet and to bathe.  Victims

6   further describe not being allowed to leave the warehouse at night, noting that the warehouse was

7   sometimes locked from the outside.  When confronted, defendant told victims that he would get in

8   trouble if authorities found out that the victims were living there.  At one point, defendant threatened the

9   workers with harm should he find out that any of them were complaining about their working or living

10  conditions to authorities.

11      When one victim suffered a serious injury, defendant told him that he could not seek medical

12  treatment in the United States and sent him back to Mexico to receive treatment.  Defendant then failed

13  to pay for the treatment.

14      When victims confronted defendant about payment, defendant responded in a manner that was

15  often dismissive, derogatory, and at times threatening.  Defendant admonished victims about being

16  unappreciative of the opportunity he had given them.  Other times, defendant threatened that if the

17  victims stopped working and left, they would never receive payment for the work they had done.  On

18  one occasion, after local law enforcement conducted an inspection the warehouse, defendant announced

19  that all workers without immigration status would have to leave the warehouse and stay at a hotel.

20      The government also anticipates presenting testimony from law enforcement officers who

21  gathered evidence by conducting interviews, performing surveillance, taking photographs of working

22  and living conditions, and executing search warrants.

23                          **ARGUMENT**

24  **I.      Victim Testimony Regarding Wages and Working Conditions is Relevant and
          Admissible**

25

26      This Court should allow the government to elicit testimony from victims on the matters set forth

27  above.  Defendant is charged with one count of harboring illegal aliens for commercial advantage or

28

CASE NO. 17-CR-462-JSW

1  private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (B)(i).  To prove defendant guilty

2  of this offense, the government must show: that at least one alien not lawfully in the United States was

3  harbored; that defendant knew or was in reckless disregard that at least one of his workers was an

4  unlawful alien; that defendant harbored, concealed or shielded from detection at least one unlawful alien

5  for the purpose of avoiding detection by immigration authorities; and that defendant did so for

6  commercial advantage or private financial gain.  NINTH CIRCUIT MODEL JURY INSTRUCTION 9.3.

7      Here, the victim testimony set forth above is probative on the elements the government must

8  prove.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be

9  without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.

10  The government anticipates eliciting victim testimony that is probative on (1) each victim's status as an

11  unlawful alien and defendant's knowledge of the victim's immigration status; (2) defendant's harboring,

12  concealing, and shielding of the victims in the warehouse; and (3) the commercial and financial benefits

13  defendant sought by paying the victims substantially less than he had promised them.

14      The government anticipates that many of the victims will testify that they crossed into the United

15  States on border crossing cards in order to work for the defendant.  The border crossing cards only

16  legally enabled them to stay in a border town for tourist purposes.  However, once the victims crossed

17  the border, defendant arranged for their transportation to Hayward to work for him.  In addition, many of

18  the victims had conversations with defendant about their status; for example, defendant asked some to

19  turn in their border crossing cards to him, defendant promised others that he would help them get legal

20  status, and defendant later ordered the workers without lawful status to leave the warehouse and go to a

21  hotel.  This evidence is probative on the victims' immigration status and defendant's knowledge of it,

22  both of which are elements the government has to prove.

23      The victims' descriptions of warehouse living conditions are also probative on the charged

24  offense.  First, the warehouse conditions demonstrate literal concealment and shielding.  Victims will

25  testify that they were not allowed to leave the warehouse at night, and that the warehouse was

26  sometimes locked from the outside.  *See United States v. Dann*, 652 F.3d 1160, 1174 (9th Cir. 2011)

27  (citing evidence that the defendant "restricted [the victim's] movement and forbade her from speaking to

28

anyone outside the home" as evidence supporting the concealment prong of a charge under 8 U.S.C.
§ 1324). The poor warehouse conditions are also probative on the manner in which defendant benefitted commercially and financially by employing these workers. The resources that defendant did not expend on providing suitable living conditions increased his potential profit margin in his construction work. This point is buttressed by defendant's failure to pay wages. In other words, juxtaposing what defendant provided to his workers here (poor living conditions, wages substantially less than minimum wage) with the employment expenses that a lawful employer would incur reveals the commercial advantage that defendant sought and obtained. As the Second Circuit explained in upholding a defendant's conviction under § 1324,

> the record supports the jury's conclusion that Mr. McClellan intended to safeguard his employees from the authorities. Like the defendant in Campbell, keeping his employees' legal status "off the radar" was important to the profitable running of his business, The Paragon. Indeed, the contract for the sale of the St. John Road house was negotiated during the same time period as the purchase of The Paragon. The location of the home minimized the illegal employees' exposure to the general public, and the free rent and utilities both made their lower wages more attractive and prevented them from engaging in other commercial transactions, which may have exposed their illegal status. There was deliberate action on Mr. McClellan's part that made detection of the employees living at the St. John Road house more difficult. Consequently, the elements of harboring under § 1324(a)(1)(A)(iii) are satisfied.

*United States v. McClellan*, 794 F.3d 743, 751 (7th Cir. 2015)

Finally, defendant's poor treatment of his workers is generally probative on how he sought and obtained a commercial advantage. The government anticipates that victims will testify that defendant threatened not to pay them at all if they left or did not listen to his orders, and further, that they felt they had little legal recourse due to the their lack of immigration status. Indeed, according to one victim, defendant challenged workers to sue him and claimed that he was "untouchable." Defendant's poor treatment of his workers evinces the leverage he had over them. Defendant consciously used that leverage – grounded on his workers' lack of immigration status – to benefit financially. And by obtaining many hours of work that he never paid for, defendant ultimately did receive a financial benefit.

//

//

## II.     Defendant's Prior Convictions are Admissible Under Rule 404(b), and if Defendant Testifies, Under Rule 609

This Court should find that defendant's prior convictions are admissible both in the government's case in chief under Federal Rule of Evidence 404(b) and, if defendant's testifies, under Federal Rule of Evidence 609.  Defendant has two prior criminal convictions for Contracting Without a License, in violation of California Business and Professions Code § 7028.  Defendant sustained these convictions in January 2007 and December 2010.

While prior bad acts are not admissible to show propensity, Fed. R. Evid. 404(a), "[e]vidence of a crime, wrong or other act" may be admissible in a criminal case to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b)(2).  It is well established that Rule 404(b) "is a rule of inclusion—not exclusion." *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc).  "Once it has been established that the evidence offered serves one of [the purposes authorized by Rule 404(b)(2)], . . . the only conditions justifying the exclusion of the evidence are those described in Rule 403 . . . ." *Id.* (internal quotation marks omitted).  Thus, "[u]nless the evidence of other acts *only* tends to prove propensity, it is admissible."  *United States v. Castillo*, 181 F.3d 1129, 1134 (9th Cir. 1999) (emphasis added); *United States v. Jones*, 982 F.2d 380, 382 (9th Cir. 1992) (Prior acts admissible "so long as the acts tended to make the existence of [the defendant's] knowledge or intent more probable than it would be without the evidence").

Other acts evidence is admissible under Rule 404(b) if it: (1) tends to prove a material point in issue; (2) is not too remote in time; (3) is proven with evidence sufficient to show that the act was committed; and (4) if admitted to prove intent, is similar to the offense charged." *United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002) (citations omitted); *accord United States v. Ramirez-Robles*, 386 F.3d 1234, 1242 (9th Cir. 2004) (citations omitted).

Here, defendant has two prior convictions for engaging in unlawful business practices.  The California statute under which defendant was convicted provides:

> Unless exempted from this chapter, it is a misdemeanor for a person to engage in the business of, or act in the capacity of, a contractor within this state under either of the following conditions:
>
> (1) The person is not licensed in accordance with this chapter.

(2) The person performs acts covered by this chapter under a license that is under suspension for failure to pay a civil penalty or to comply with an order of correction, pursuant to Section 7090.1, or for failure to resolve all outstanding final liabilities, pursuant to Section 7145.5.

Cal. Bus. & Prof. Code § 7028.  Defendant was convicted of violating this statute on January 31, 2007, and December 8, 2010.  For the first conviction, defendant served a 9-day jail sentence.  For the second conviction, he received a three-year probation term.

These prior convictions evince defendant's willingness to engage in unlawful and deceptive business practices to gain a commercial advantage.  The fact that defendant has twice been convicted of engaging in unlawful business practices – specific to contracting – is probative on several 404(b) factors here: motive, intent, preparation, plan, knowledge, and absence of mistake or lack of accident.  Indeed, the government has charged defendant with violating a law – employing illegal aliens – in order to gain a business benefit.  The fact that defendant twice shown a willingness to engage in such conduct in the past is probative on: defendant's motive and intent in hiring illegal aliens to work for him; his plan and preparation in specifically targeting those workers with an advertisement in a Mexican newspaper; and his absence of mistake in benefitting financially by obtaining their labor without adequate compensation.

In addition, should defendant testify, this Court should admit these prior convictions on cross examination.  Federal Rule of Evidence 609 provides that evidence of a prior crime "must be admitted if the court can readily determine that establishing the elements of the crime required proving – or the witness's admitting – a dishonest act or false statement."  Fed. R. Evid. 609(a)(2).  The statute set forth above proscribes the dishonest act of engaging in contracting business without having a contractor's license.  Moreover, defendant's successive convictions under the statute precludes any claim that his convictions were the product of ignorance rather than dishonesty.

//

//

//

//

1    DATED:  10/22/18                          Respectfully,

2                                              ALEX G. TSE
                                               United States Attorney
3

4                                                        /s/

5                                              RAVI T. NARAYAN
                                               JONATHAN U. LEE
6                                              Assistant United States Attorneys

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 17-CR-462-JSW