UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA                    **ORIGINAL**

Before The Honorable JEFFREY S. WHITE, Judge

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **Jury Trial - EXCERPT** |
| | ) | |
| Plaintiff, | ) | **Volume 5** |
| | ) | |
| vs. | ) | NO. CR 17-00462 JSW |
| | ) | |
| JOB TORRES HERNANDEZ, | ) | **Pages 1 - 32** |
| | ) | |
| Defendant. | ) | Oakland, California |
| _____ | ) | Thursday, March 7, 2019 |

**REPORTER'S TRANSCRIPT OF EXCERPT OF PROCEEDINGS**

<u>**APPEARANCES:**</u>

For Plaintiff:            David L. Anderson, Esq.
                          United States Attorney
                          450 Golden Gate Avenue
                          San Francisco, California  94102
                  BY:  JONATHAN U. LEE,
                       RAVI T. NARAYAN,
                       ASSISTANT UNITED STATES ATTORNEYS

For Defendant:            Law Offices of Austin R. Dove
                          555 W. 5th Street, 35th Floor
                          Los Angeles, California  90017
                  BY:  AUSTIN R. DOVE, ATTORNEY AT LAW

                          Law Offices of Brian H. Getz
                          888 Kearny Street, Suite 850
                          San Francisco, California  94108
                  BY:  BRIAN H. GETZ, ATTORNEY AT LAW

Reported By:              Raynee H. Mercado
                          CSR. No. 8258

    Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

## I N D E X

**GOVERNMENT'S WITNESSES**                                       **PAGE**    **VOL.**

Nolazco, Dave Noel Alvarez

DIRECT EXAMINATION BY MR. NARAYAN                    4          5

CROSS-EXAMINATION BY MR. DOVE                        22         5


| **TRIAL EXHIBITS** | **W/DRAWN** | **IDEN** | **EVID** | **VOL.** |
|---|---|---|---|---|
| 63 | | 29 | | 5 |

--oOo--

```
 1    Thursday, March 7, 2019                          EXCERPT

 2                    *      *      *      *      *

 3         MR. NARAYAN:  Your Honor, the government calls Dave

 4    Noel Alvarez Nolazco.

 5         THE COURT:  All right.  Please come forward, sir.

 6    (Speaking Spanish.)

 7         THE CLERK:  Raise your right hand, please.

 8       Raise your right hand, please.

 9                    DAVE NOEL ALVAREZ NOLAZCO,

10    called as a witness for the PLAINTIFF, having been duly sworn,

11    testified as follows:

12         THE CLERK:  Thank you.

13       Please be seated and state and spell your full name for

14    the record.

15         THE WITNESS:  (Through the interpreter) Dave Noel.

16         THE CLERK:  Spell it, please.

17         THE WITNESS:  (Through the interpreter) The -- you

18    mean my whole name?

19         THE CLERK:  Yes.

20         THE WITNESS:  (Through the interpreter) Dave Noel

21    Alvarez Velasco (phonetic).

22       (Discussion between the interpreter and the witness.)

23         THE WITNESS:  (Through the interpreter) Nolazco.

24         THE CLERK:  And spell it, please.

25         THE WITNESS:  (Through the interpreter) D-a-v-e,
```

1    N-o-e-l, A-l-v-a-r-e-z, N-O-l --

2              **THE INTERPRETER:**  The Interpreter -- sorry.  Say

3    again.

4        N-o-l-a-z-c-o.

5              **THE CLERK:**  Thank you.

6                        **DIRECT EXAMINATION**

7    BY MR. NARAYAN:

8    **Q.**  Good morning, sir.  I want to start by giving the jury an

9    opportunity to ask get to know just a little bit about who you

10   are.

11       Where were you born?

12   **A.**  (Through the interpreter) Mastan (phonetic), Sinaloa in

13   Mexico.

14   **Q.**  Is that also where you grew up?

15   **A.**  (Through the interpreter) Yes, until I was five.

16   **Q.**  Where did you grow up?

17   **A.**  (Through the interpreter) Tijuana, Mexico.

18   **Q.**  Sir, do you now live in the United States?

19   **A.**  (Through the interpreter) Yes.

20   **Q.**  Are you married?

21   **A.**  (Through the interpreter) Yes.

22   **Q.**  Do you have any children?

23   **A.**  (Through the interpreter) Yes.

24   **Q.**  And how many children do you have?

25   **A.**  (Through the interpreter) One.

NOLAZCO - DIRECT / NARAYAN

1    **Q.** Where is your wife and child?

2    **A.** (Through the interpreter) Tijuana.

3    **Q.** Sir, do you have a work permit permitting you to work in

4    the United States?

5    **A.** (Through the interpreter) Yes.

6    **Q.** Do you have a job here?

7    **A.** (Through the interpreter) Yes.

8    **Q.** And what is your occupation?

9    **A.** (Through the interpreter) I work in a warehouse.

10    **Q.** What do you do at the warehouse where you work?

11    **A.** (Through the interpreter) We deliver food for Amtrak.

12    **Q.** And is that here in Northern California?

13    **A.** (Through the interpreter) Yes.

14    **Q.** All right.

15        Now, I want to talk about how you got from Mexico to the

16    United States.  Let's start with this:  When did you come to

17    the United States?

18    **A.** (Through the interpreter) I arrived here in August 2016.

19    **Q.** Did you come here after you heard about a job opportunity?

20    **A.** (Through the interpreter) Yes.

21    **Q.** And did you cross the border in San Ysidro, California?

22    **A.** (Through the interpreter) Yes.

23    **Q.** What documentation did you have at the time you crossed

24    the border?

25    **A.** (Through the interpreter) A visa laser (sic) -- laser

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

1    visa.  A tourist visa.

2    **Q.**  After you crossed the border, did you eventually go to

3    Hayward, California?

4    **A.**  (Through the interpreter) Excuse me?

5    **Q.**  Did you go to Hayward, California after you crossed the

6    border?

7    **A.**  (Through the interpreter) Yes.

8    **Q.**  Is that where the job opportunity was?

9    **A.**  (Through the interpreter) Yes.

10   **Q.**  When you got to Hayward, California, did you meet a person

11   named Job Torres Hernandez?

12   **A.**  (Through the interpreter) Yes.

13   **Q.**  Do you see Mr. Torres Hernandez here in the courtroom

14   today?

15   **A.**  (Through the interpreter) Yes.

16   **Q.**  Could you describe where he is and what he's wearing?

17   **A.**  (Through the interpreter) He's on the left side, a blue

18   jacket.

19          **MR. NARAYAN:**  Your Honor, may the record reflect that

20   the witness has identified the defendant?

21          **THE COURT:**  Yes, it will reflect.

22   BY MR. NARAYAN:

23   **Q.**  How soon after getting to Hayward, California in August of

24   2016 did you meet the defendant?

25   **A.**  (Through the interpreter) Next day.

NOLAZCO - DIRECT / NARAYAN

1    **Q.**  Where did the meeting take place?

2    **A.**  (Through the interpreter) At the shop.

3    **Q.**  Do you remember what street the shop was on?

4    **A.**  (Through the interpreter) 2140 Dunn Road, Hayward.

5    **Q.**  Where in the shop did the meeting take place?

6    **A.**  (Through the interpreter) In the office.

7    **Q.**  In whose office?

8    **A.**  (Through the interpreter) Job Torres.

9    **Q.**  Who was in the office during the conversation?

10   **A.**  (Through the interpreter) The person I arrived with, Jaime

11   Garcia.

12   **Q.**  So we understand correctly, it's you, Jaime Garcia, and

13   the defendant?

14   **A.**  (Through the interpreter) Yes.

15   **Q.**  What did the defendant tell you during this initial

16   conversation?

17   **A.**  (Through the interpreter) He asked me whether I felt like

18   working.

19   **Q.**  What did you say?

20   **A.**  (Through the interpreter) I said "yes."

21   **Q.**  And what, if anything, did he say in response to that?

22   **A.**  (Through the interpreter) "Yes.  There's work."

23   **Q.**  Did the two of you discuss what you would be paid for the

24   work you'd be doing?

25   **A.**  (Through the interpreter) I remember, he said $12 an hour.

1   **Q.**  Did he say what type of work you would be doing?

2   **A.**  (Through the interpreter) Yes.

3   **Q.**  And what type of work did he say you would being doing?

4   **A.**  (Through the interpreter) We're going to be doing all

5   kinds of things, everything, painting, sheetrock, excavations.

6   **Q.**  Did you have skills related to those tasks?

7   **A.**  (Through the interpreter) A little.

8   **Q.**  You told us before that you had come to the United States

9   on a tourist visa; is that right?

10   **A.**  (Through the interpreter) Yes.

11   **Q.**  Did that tourist visa permit to you work?

12   **A.**  (Through the interpreter) No.

13   **Q.**  Did you tell the defendant about your immigration status?

14   **A.**  (Through the interpreter) Yes.

15   **Q.**  Was this during that initial interaction we been talking

16   about or later?

17   **A.**  (Through the interpreter) Later, after the -- after the

18   time I met him.

19   **Q.**  How much later?

20   **A.**  (Through the interpreter) During that week.

21   **Q.**  What did you say to him about your immigration status?

22   **A.**  (Through the interpreter) I had a tourist visa, I told

23   him.

24   **Q.**  How did he respond?

25   **A.**  (Through the interpreter) He said it was fine, no problem.

1   **Q.**  Did he ask to see your tourist visa?

2   **A.**  (Through the interpreter) Yes.

3   **Q.**  And what happened?

4   **A.**  (Through the interpreter) I showed it to him, and he made

5   a copy.

6   **Q.**  Did you see him make a copy?

7   **A.**  (Through the interpreter) Yes.  He had a photocopy machine

8   inside the office.

9   **Q.**  Where did you sleep upon arriving in Hayward?

10  **A.**  (Through the interpreter) Job sent us to the garage to

11  sleep there.  But since the garage was too full, we stayed

12  outside in the cars.

13  **Q.**  When you say "we," who are you talking about?

14  **A.**  (Through the interpreter) Jaime Garcia, Paco Sabas, and

15  myself.  And Jose Leonardo.

16  **Q.**  What car did you sleep in?

17  **A.**  (Through the interpreter) I was sleeping in a gray van.

18  **Q.**  Were you by yourself sleeping in the van?

19  **A.**  (Through the interpreter) Jaime Garcia was there, too.

20  **Q.**  You mentioned that you were sleeping in the van because

21  the garage was full; is that right?

22  **A.**  (Through the interpreter) yes.

23  **Q.**  Was in the garage on Folsom Street?

24  **A.**  (Through the interpreter) Yes.

25  **Q.**  How long did you sleep in the van?

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

1    **A.**   (Through the interpreter) About 15 days.

2    **Q.**   During those 15 days, were you also doing work for the

3    defendant?

4    **A.**   (Through the interpreter) yes.

5    **Q.**   What kind of work were you doing for the defendant?

6    **A.**   (Through the interpreter) Framing, sheetrock, digging,

7    excavation.

8    **Q.**   How many hours per day were you doing this framing,

9    sheetrock, and excavation work?

10   **A.**   (Through the interpreter) We would start at 6:00, 7:00

11   a.m. until about 8:00 -- 8:00, 9:00 p.m.  We had a -- about

12   that time.

13   **Q.**   Was that during the whole 15 days that you slept in the

14   gray van?

15   **A.**   (Through the interpreter) I worked those hours from August

16   till December.

17   **Q.**   Okay.

18       You said that you slept in the van for 15 days.  Do I have

19   that right?

20   **A.**   (Through the interpreter) Yes.

21   **Q.**   After those 15 days had elapsed, where did you sleep from

22   that point forward?

23   **A.**   (Through the interpreter) Job sent us to Sacramento.

24   **Q.**   How do you know that it was the defendant who sent you to

25   Sacramento?

1    **A.**   (Through the interpreter) He told us.

2    **Q.**   What did he say?

3    **A.**   (Through the interpreter) That the four of us were going

4    to live in Sacramento.

5    **Q.**   Were you taken to a property in Sacramento?

6    **A.**   (Through the interpreter) It was like a ranch.

7    **Q.**   Can you describe it?  Could you please describe the ranch?

8    **A.**   (Through the interpreter) It was a big ranch.  There were

9    three large trailers.  They -- it was, like, a fish farm.  And

10   animals.

11   **Q.**   Where on the fish farm did you sleep?

12   **A.**   (Through the interpreter) In the middle, there was a

13   trailer.

14   **Q.**   Who, if anyone, did you share the trailer with?

15   **A.**   (Through the interpreter) Yes (sic).

16   **Q.**   Who are the people that you shared the trailer with?

17   **A.**   (Through the interpreter) Jose Leonardo, Jaime Garcia,

18   Raul Paul Divere (phonetic), and myself.

19   **Q.**   How long did you live in this trailer in Sacramento on the

20   fish farm?

21   **A.**   (Through the interpreter) August till December.

22   **Q.**   We're talking about 2016, right?

23   **A.**   (Through the interpreter) Yes.

24   **Q.**   During the time that you were living in Sacramento, where

25   were you working?

1    **A.**   (Through the interpreter) Hayward.

2    **Q.**   How did you get to and from Sacramento and Hayward?

3    **A.**   (Through the interpreter) With a pickup.  Job.

4    **Q.**   A pickup truck given to you by the defendant; is that

5    right?

6    **A.**   (Through the interpreter) Yes.

7    **Q.**   How long was the drive from Sacramento to Hayward?

8    **A.**   (Through the interpreter) Sometimes three, four hours

9    because of the traffic.

10   **Q.**   Each way?

11   **A.**   (Through the interpreter) Yes.

12   **Q.**   What hours were you working in Hayward?  In other words,

13   how long was your shift?

14   **A.**   (Through the interpreter) Well, at the time we arrived,

15   which was 8:00 a.m. until 8:00, 9:00 p.m.

16   **Q.**   If you left at 8:00, 9:00 p.m. from Hayward, what time

17   would you reach the fish farm in Sacramento?

18   **A.**   (Through the interpreter) Oh, around 11:00 p.m.

19   **Q.**   And then what time would you wake up the next day to go

20   back to work?

21   **A.**   (Through the interpreter) 4:00 or 4:30.

22   **Q.**   How many workers were in the pickup truck on the way

23   between Hayward and Sacramento?

24   **A.**   (Through the interpreter) Four.

25   **Q.**   Did this routine continue all the way from August of 2016

1   to December of 2016?

2   **A.**   (Through the interpreter) Yes.

3   **Q.**   How many days per week did you work during that time?

4   **A.**   (Through the interpreter) Seven days.

5   **Q.**   You said that the defendant promised you $12 per hour for

6   your work; is that right?

7   **A.**   (Through the interpreter) Yes, that's what I remember.

8   **Q.**   During this time period, did he pay you the $12 per hour?

9   **A.**   (Through the interpreter) No.

10  **Q.**   How often did he pay you during that time period?

11  **A.**   (Through the interpreter) He paid what he wanted and

12  whenever he wanted.  You could say he gave me 300 a week, 500.

13  But -- But it wasn't every week.  It was not constant.

14  **Q.**   What were you doing with the money that you were

15  receiving?

16  **A.**   (Through the interpreter) Well, it was barely enough to

17  get food and to send some money to my family.

18  **Q.**   Were those your two priorities with the money that you

19  had, to feed yourself and to send money to your family?

20  **A.**   (Through the interpreter) Of course.

21  **Q.**   Is that the -- the wife and the child you mentioned in

22  Mexico?

23  **A.**   (Through the interpreter) I didn't quite understand.

24  **Q.**   The family that you were sending money to, is that the

25  wife and the son that you said you had in Mexico?

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

1    **A.**   (Through the interpreter) Yes.  Yeah.

2    **Q.**   Did you have enough leftover money to eat?

3    **A.**   (Through the interpreter) Barely.

4           **MR. DOVE:**  Vague as to time, Your Honor.

5           **MR. NARAYAN:**  May I respond?

6           **THE COURT:**  Fair enough.  Fair enough.  Sustained.

7        Would you please clarify the time period that we're

8    talking with as to that particular question.

9           **MR. NARAYAN:**  Yes, Your Honor.

10   **Q.**   I'm going to ask you a question with respect to this

11   period of time that you were living in Sacramento which you

12   said was August 2016 to December 2016.

13   **A.**   (Through the interpreter) Yes.

14   **Q.**   During that time period of time, did you have enough money

15   to eat?

16   **A.**   (Through the interpreter) No.

17   **Q.**   Would you at times go hungry?

18   **A.**   (Through the interpreter) Yes.

19   **Q.**   Did you ever request more money from the defendant?

20   **A.**   (Through the interpreter) Yes.

21   **Q.**   How often would you do that?

22   **A.**   (Through the interpreter) Every week.

23   **Q.**   Would you do this while you were in Hayward?

24   **A.**   (Through the interpreter) Yes.

25   **Q.**   How would the defendant respond when you would ask him for

1  money?

2  **A.**  (Through the interpreter) He kept saying "I'll pay you

3  tomorrow" or "wait for a couple of days," and that's the way

4  it went on.

5      One week, two weeks would go by and he would give us part

6  of the money.  That's all.

7  **Q.**  During the time period of August 2016 to December 2016,

8  what's the longest period of time you went without receiving

9  any payment?

10  **A.**  (Through the interpreter) August to December.  Yes.

11  **Q.**  With -- within that -- I -- I should ask a clearer

12  question.

13      Within that period of time, what's the longest amount of

14  time that passed without you receiving any money at all?

15  **A.**  (Through the interpreter) Well, I could just say that that

16  whole time was very difficult.

17  **Q.**  Okay.

18      I'll move on.

19          **THE COURT:**  Thank you.

20  **BY MR. NARAYAN:**

21  **Q.**  Did you go to Mexico to visit your family around

22  Christmastime in 2016?

23  **A.**  (Through the interpreter) Yes.

24  **Q.**  How many days before Christmas did you go home?

25  **A.**  (Through the interpreter) The day before.  The day before

NOLAZCO - DIRECT / NARAYAN

1    Christmas.

2    Q.  Was there a job you worked on in Hayward right before you

3    went home on Christmas Eve in 2016?

4    A.  (Through the interpreter) Yes.

5    Q.  Do you remember that job?

6    A.  (Through the interpreter) In Alpine, Hayward.

7    Q.  Was there a long shift that you worked around that time?

8    A.  (Through the interpreter) Yes.

9    Q.  Can you tell us about that?

10   A.  (Through the interpreter) Okay.  That day we worked at the

11   San Jose towers.  We worked from 6:00 a.m. till 2:30 p.m.  And

12   Job told me and Jaime Garcia -- he told me that everybody left

13   for Tijuana, so he asked us whether we could cover.

14       And so Jaime Garcia and I opted to stay that week.  And --

15   and we covered for the other people so we could finish the

16   jobs.

17   Q.  I'm going to stop you and ask another question, okay?

18       You said that you were covering for a job?  What -- What

19   job were you covering for?

20   A.  (Through the interpreter) For -- for Alpine.

21   Q.  Okay.  Now, please continue describing what happened.

22   A.  (Through the interpreter) So we left San Jose, and we went

23   to Alpine.  And we worked there from 3:00 p.m. until midnight.

24   And Job had promised that he would pay us for the weeks he

25   owed and what else -- whatever he owed us and then bonuses as

1    well.

2        So we finished the job.  We finished at midnight.  And we

3    went with Job to get our money and so that we could leave

4    after that.  And Job said he didn't have any money, and he

5    gave us each a hundred dollars, Jaime and I, so that was just

6    enough for gas.  And so we were upset.  We were angry because

7    what we wanted was our money, of course.

8    **Q.**  One of the things you said is that the defendant had

9    promised he would pay you if you completed that job; is that

10   right?

11   **A.**  (Through the interpreter) Yes.

12   **Q.**  When did he make that promise?

13   **A.**  (Through the interpreter) He made the promise to us when

14   the rest of people took off for Tijuana one week before

15   Christmas.

16   **Q.**  You said that you had worked until midnight on this job

17   you just described.  Was that midnight on December 23rd or

18   December 24?

19   **A.**  (Through the interpreter) 23rd.

20   **Q.**  And after you had completed the work on the job, describe

21   the interaction you had with the defendant.

22   **A.**  (Through the interpreter) Well, we went to get our money,

23   but he didn't pay us anything.

24   **Q.**  You said he gave you and -- and Jaime gas money.

25   **A.**  (Through the interpreter) Yes.

1    **Q.**   Did you use that gas money to go to Tijuana?

2    **A.**   (Through the interpreter) Yes.

3    **Q.**   After Christmas passed, did you hear from the defendant?

4    **A.**   (Through the interpreter) No.

5    **Q.**   Did you eventually return to Hayward to keep working for

6    the defendant?

7    **A.**   (Through the interpreter) Yes, 15 days later.

8    **Q.**   Why?

9    **A.**   (Through the interpreter) Because it was my money.

10   **Q.**   And what do you mean by that?

11   **A.**   (Through the interpreter) Well, I wanted him to pay me

12   what he owed me.

13   **Q.**   When you came back after Christmas to the United States

14   and specifically Hayward, where did you live at that point?

15   **A.**   (Through the interpreter) At that point, we were still

16   staying at the ranch.

17   **Q.**   In Sacramento?

18   **A.**   (Through the interpreter) Yes.

19   **Q.**   Did the defendant eventually move you to Hayward?

20   **A.**   (Through the interpreter) Yes.

21   **Q.**   About when did that happen?

22   **A.**   (Through the interpreter) At the beginning -- in January

23   2017.

24   **Q.**   Where in Hayward did you live at that point?

25   **A.**   (Through the interpreter) On Folsom in the garage.

NOLAZCO - DIRECT / NARAYAN

1  **Q.**  The same garage that when you got to Hayward, it was too

2  full for you to stay there?

3  **A.**  (Through the interpreter) Yes.

4  **Q.**  Was there now space in that garage?

5  **A.**  (Through the interpreter) Yes.

6  **Q.**  Were you able to get a bed in the garage?

7  **A.**  Yes.

8  **Q.**  How many people were staying in the garage as of that

9  time?

10  **A.**  (Through the interpreter) At that point, I would say five

11  because everybody had left for Tijuana.

12  **Q.**  Did it get fuller when people came back from Tijuana?

13  **A.**  (Through the interpreter) A month after that.

14                    (Pause in the proceedings.)

15            **MR. NARAYAN:**  Permission to publish Exhibit 17, page

16  148?

17            **THE COURT:**  Yes.

18            **MR. NARAYAN:**  It's already been admitted.

19            **THE COURT:**  Yes.

20                    (Exhibit published.)

21  BY MR. NARAYAN:

22  **Q.**  Sir, do you recognize what's shown in this photograph

23  which just came up on the screen?

24  **A.**  (Through the interpreter) Yes.

25  **Q.**  Is it the garage that you were just discussing that there

1   was now space in for you to sleep?

2   **A.**   (Through the interpreter) Yes.

3          **MR. NARAYAN:**   Permission to publish page 149, which

4   has also been admitted.

5          **THE COURT:**   Yes.

6                    (Exhibit published.)

7   **BY MR. NARAYAN:**

8   **Q.**   Is this the same garage?

9   **A.**   (Through the interpreter) Yes.

10  **Q.**   And who is that in the white shirt, if you know?

11  **A.**   (Through the interpreter) Me.

12  **Q.**   Did you live here from January 2017 up until the time you

13  stopped working for the defendant?

14  **A.**   I lived there from January 2017 to August.

15  **Q.**   During that period of time, did you work primarily on a

16  job called Silvery Towers?

17  **A.**   (Through the interpreter) Yes.

18  **Q.**   Sir, do you recall an incident where you and about eight

19  or nine other workers confronted the defendant about payment?

20  **A.**   (Through the interpreter) Yes.

21  **Q.**   The incident I'm talking about, when did that take place?

22                (Translation by the interpreter.)

23  **BY MR. NARAYAN:**

24  **Q.**   Approximation is fine if you don't remember the date.

25  **A.**   (Through the interpreter) February?  I don't remember

NOLAZCO - DIRECT / NARAYAN

1  exactly the date.

2  **Q.**  Is it fair to say it was during this time that we're

3  focused on right now when you were working on this Silvery

4  Towers job in 2017?

5  **A.**  (Through the interpreter) Yes.

6  **Q.**  Where did this incident take place?

7  **A.**  (Through the interpreter) At Job Torres's office at the

8  shop.

9  **Q.**  At the shop on Dunn Road in Hayward?

10  **A.**  (Through the interpreter) Yes.

11  **Q.**  Did you or any of the other workers confront the defendant

12  about a lack of payment during this interaction?

13            **MR. DOVE:**  Asked and answered, Your Honor.

14            **THE COURT:**  Overruled.

15            **THE WITNESS:**   (Through the interpreter) Yes.

16  **BY MR. NARAYAN:**

17  **Q.**  You remember what the defendant said?

18  **A.**  (Through the interpreter) Yes.  I remember.

19  **Q.**  What did he say?

20  **A.**  (Through the interpreter) When I got there, Manuel was

21  inside the office.  When I went in, Job Torres said -- Manuel

22  was fighting for his -- for the week that he had worked, his

23  pay.

24       When I went in, I heard Job Torres say to Manuel, "I want

25  you all to get out.  And when you get out, I don't want to see

1  anybody outside.  Or do you want me to call the police?

2  Immigration."

3       **MR. NARAYAN:**  No further questions, Your Honor.

4       **THE COURT:**  Thank you.

5     You may cross-examine.

6       **MR. DOVE:**  Yes.  Thank you, Your Honor.

7       **THE COURT:**  We're going to go about another 15

8  minutes maybe, and then we'll -- I'll instruct the jury and

9  we'll break for the weekend.

10       **MR. DOVE:**  Yes, Your Honor.  Thank you.

11       **THE COURT:**  Thank you.  So take your time.

12                  <u>CROSS-EXAMINATION</u>

13  BY MR. DOVE:

14  **Q.**  Good afternoon, sir.

15  **A.**  (Through the interpreter) Good afternoon.

16  **Q.**  Now, your name is -- is it correct to say Dave Noel

17  Nolazco Alvarez?

18  **A.**  (Through the interpreter) Yes.

19  **Q.**  And you -- you learned about working with Mr. Torres

20  through a friend of yours named Jaime, correct?

21  **A.**  (Through the interpreter) Yes.

22  **Q.**  All right.  And you knew Jaime from Mexico, from Tijuana?

23  **A.**  (Through the interpreter) Yes.

24  **Q.**  Right.  How long had you known Jaime?  When did you meet

25  Jaime?

1    **A.**  (Through the interpreter) His kids worked with me in

2    Tijuana.  I met him through them.

3    **Q.**  All right.  So how long have you known Jaime?

4    **A.**  (Through the interpreter) In Tijuana, about four months.

5    **Q.**  All right.  And four months -- in what year did you meet

6    Jaime?

7    **A.**  (Through the interpreter) 2016.

8    **Q.**  Right.  Did you consider Jaime a good friend?

9    **A.**  (Through the interpreter) Yes.

10   **Q.**  All right.  And you said you had worked with Jaime's kids,

11   right, his kids down in Tijuana?

12             **THE INTERPRETER:**  May the interpreter hear the

13   question again?

14   **BY MR. DOVE:**

15   **Q.**  Did you work with Jaime's kids in Tijuana?

16   **A.**  (Through the interpreter) Yes.

17   **Q.**  All right.

18        And did you spend much time with Jaime in Tijuana?

19             (Translation by the interpreter.)

20   **BY MR. DOVE:**

21   **Q.**  Right.

22   **A.**  (Through the interpreter) Yes.  Yes, often.

23   **Q.**  So he was someone that you -- you trusted, right?

24   **A.**  (Through the interpreter) Yes.

25   **Q.**  All right.

1            And now, you would communicate with Jaime using a cell

2      phone, right?

3      **A.**   (Through the interpreter) Yeah, right.

4      **Q.**   All right.

5            And Jaime -- did Jaime at some point make contact with you

6      in -- in or around August of 2016?

7      **A.**   (Through the interpreter) Yeah.

8      **Q.**   And was that when you sort of first learned about a chance

9      to come up and work in the U.S.?

10     **A.**   (Through the interpreter) Yes.

11     **Q.**   Right.

12           Now, before that, you had been to the U.S. and worked

13     many -- many times, right?

14     **A.**   (Through the interpreter) No.

15     **Q.**   Hadn't you worked up in Oregon before for a period of time

16     before you came to work for Mr. Torres?

17     **A.**   (Through the interpreter) No.  Never.

18     **Q.**   All right.

19           You had a -- been trying to get a -- a status that would

20     permit you to work in the U.S. even back in 20- -- early 2016,

21     correct?

22     **A.**   (Through the interpreter) I don't understand.

23     **Q.**   Weren't you trying to apply for lawful permission to work

24     in the United States as early as January of 2016?

25     **A.**   (Through the interpreter) No.

1   **Q.**   You had made no such effort?

2   **A.**   (Through the interpreter) For permission?  No.

3   **Q.**   Right.  So did you already have permission to work in the

4   U.S. in -- in 2016?

5   **A.**   (Through the interpreter) Never.

6   **Q.**   All right.  But when you came to meet Mr. Torres, you gave

7   him some documents, didn't you?

8   **A.**   (Through the interpreter) Yes.

9   **Q.**   And those documents -- those documents that you gave

10  Mr. Torres were documents that -- one of them was a Social

11  Security card, correct?

12  **A.**   (Through the interpreter) No.

13  **Q.**   You never gave Mr. Torres that?

14  **A.**   (Through the interpreter) No.

15  **Q.**   Did you ever have in our possession at any time during

16  2016 a Social Security card?

17  **A.**   (Through the interpreter) No.

18  **Q.**   All right.  How about a -- a card with your photograph on

19  it that said that -- that provided you with a lawful or legal

20  permanent resident status?

21  **A.**   (Through the interpreter) No.

22  **Q.**   All right.

23       But you did give Mr. Torres documents when you first

24  arrived concerning your -- who you were, like your I.D.,

25  right?

1    **A.**   (Through the interpreter) My tourist visa.

2    **Q.**   Right.

3         All right.  And this was, again, what time?  And this was

4    in middle or late 2016?

5    **A.**   (Through the interpreter) Yes.

6    **Q.**   All right.

7         You deny, sir, that you had ever presented a legal

8    permanent resident card with the name -- I'll try another

9    name --

10        Here's another question, Your Honor.

11        Did you present a identification to Mr. Torres with the

12   name Noel Gutierrez Mendoza?

13   **A.**   (Through the interpreter) I've remembered.  Job got that

14   paper out.  He got that paper so that we could all go work in

15   the job in San Jose.

16   **Q.**   So you're saying that there was a paper that Joe gave you

17   that had your photograph on it?

18   **A.**   (Through the interpreter) Yes.  Job got one of those for

19   all of us so he could get us into the job in San Jose.

20   **Q.**   And this was a document that you accepted?  Is that your

21   testimony?

22   **A.**   (Through the interpreter) Yes.

23   **Q.**   All right.  And also -- so you presented this card to

24   someone else and held on to it yourself, correct?

25   **A.**   (Through the interpreter) Job had all of that.

1   **Q.** All right.  I want to be clear.

2        You're saying when you showed up the first time to work

3   for Mr. Torres, Mr. Torres handed you a card that said "United

4   States of America Permanent Resident."

5             **MR. NARAYAN:**  Objection, misstates the evidence.

6             **THE COURT:**  Overruled.

7             **THE WITNESS:**  (Through the interpreter) I didn't

8   understand.

9   **BY MR. DOVE:**

10  **Q.** All right.  I'm going to show you a document, and let me

11  see if this refreshes your recollection so we're on the same

12  page --

13            **THE COURT:**  Please ask for permission to approach

14  each time.

15            **MR. DOVE:**  I apologize.  Thank you, You Honor.

16       May I approach?

17            **THE COURT:**  Yes, you may.

18            **MR. DOVE:**  Thank you.

19                       (Handing document.)

20            **THE WITNESS:**  (Through the interpreter) Yes, I

21  remember this.

22  **BY MR. DOVE:**

23  **Q.** And so is it your testimony --

24       And just should I describe it for the record, Your Honor,

25  at all?  Or no?

1    **THE COURT:**  Well, it depends.  If you are going to

2    offer it, yes.  But I think -- I think it's a good idea to

3    mark it for identification, because, otherwise, there will be

4    no record on what exactly it is that we're talking about.

5        So I would strongly suggest that you mark it, at least for

6    identification.

7        **MR. DOVE:**  Yes.

8        **THE COURT:**  And then whatever you do with it after

9    that, you know, we'll take it a step at a time.

10       **MR. DOVE:**  I'd like to mark this document I just

11   handed the witness next in order, if I may.

12       It hasn't yet been lodged.  It had previously been -- it's

13   for refreshing recollection.  Now, it looks like it may have a

14   different purpose.  That's where I am.

15       **THE COURT:**  All right.  So we need to give it the

16   next number in order, whatever that is.

17       **THE CLERK:**  Be Joint Exhibit No. 63.

18       And, Counsel, can you state on the record what the

19   document is.

20       **THE COURT:**  Yeah, describe it generally please so the

21   record will be clear exactly what it is.

22       **MR. DOVE:**  Yes, Your Honor.

23       The document exists of a -- two photographs.  One of them

24   is Social Security card with the last name Noel -- or the name

25   Noel.  And the second one is a legal permanent resident card

1   with the name I had previously mentioned, Noel Gutierrez

2   Mendoza.

3           **THE COURT:**  All right.  So it's now marked for

4   identification.

5           **THE CLERK:**  And how many pages is the document?

6           **MR. DOVE:**  It's one page.

7       (Trial Exhibit 63 marked for identification)

8           **THE COURT:**  All right.  You may proceed.

9           **MR. DOVE:**  All right.

10  **Q.**  So, sir, is it your testimony that --

11      Well, first of all, in that -- the document that's in

12  front of that has the legal permanent resident identification,

13  is that your picture on there?

14  **A.**  (Through the interpreter) Yes.

15  **Q.**  All right.  Did you sit for that picture somewhere?

16  **A.**  (Through the interpreter) With Job.

17  **Q.**  Where?

18  **A.**  (Through the interpreter) At the shop.

19  **Q.**  So in the shop you sat there, you took a photograph which

20  is now on -- which was then later placed on a legal permanent

21  resident card?

22  **A.**  (Through the interpreter) Job took photos of us.  Job took

23  photos of us.  These were the papers that he was going to be

24  presenting to allow us to work in San Jose.  He told us that

25  without this document, we couldn't work there.

1    **Q.**  All right.  So you took the picture, right?

2    **A.**  (Through the interpreter) Yes.

3    **Q.**  And you carried that I.D. around.

4    **A.**  (Through the interpreter) No.

5    **Q.**  All right.  Was there some method, like a -- a system of a

6    machine that would have, like, an embossing and that could

7    create a document that was a -- a forged document that you saw

8    in the office at -- at Hayward -- in Hayward on Dunn Road?

9            **MR. NARAYAN:**  Objection, vague.

10            **THE COURT:**  Overruled.

11            **THE WITNESS:**  (Through the interpreter) I don't know.

12    Job would take care of it.

13    **BY MR. DOVE:**

14    **Q.**  So you sat there, took a photograph at the Dunn Road

15    facility, right?

16    **A.**  (Through the interpreter) Yes.

17    **Q.**  All right.

18        Days later, Joe comes back and hands you that document?

19    **A.**  (Through the interpreter) He kept them.

20    **Q.**  But that was your photograph on the document.  You

21    still -- You agree with that, right?

22    **A.**  (Through the interpreter) Yeah, I agree.

23    **Q.**  The name, Noel Gutierrez Mendoza is unknown to you before

24    now or before that document?

25    **A.**  (Through the interpreter) Right.

1    **THE COURT:**  Mr. Dove, if you're going to move on to

2    another subject, I think it's a good time to break unless you

3    want --

4    **MR. DOVE:**  This will be, I think, just a short slice

5    in this next thing.

6    **THE COURT:**  Okay.  Great.

7    BY MR. DOVE:

8    **Q.**  The first time you came to the U.S. was in August of 2016?

9    **A.**  (Through the interpreter) Yes.

10   **Q.**  All right.

11   How did you get to the U.S. then?

12   **A.**  (Through the interpreter) With a tourist visa.

13   **Q.**  All right.  Did you present that tourist visa to

14   Mr. Torres?

15   **A.**  (Through the interpreter) Yes.

16   **Q.**  That was your first and only time coming to the U.S.,

17   August 2016?

18   **A.**  (Through the interpreter) Yes, first time.

19   **Q.**  You came to work, right?

20   **A.**  (Through the interpreter) Yes.

21   **Q.**  The tourist visa didn't give you permission to work.

22   **A.**  (Through the interpreter) No.

23   **Q.**  Right.

24   And you wanted to work in construction, right?

25   **A.**  (Through the interpreter) Yes.

1  **Q.**  And you were willing to do whatever it took to get a job

2  in construction, correct?

3  **A.**  (Through the interpreter) I wanted to work.

4          **MR. DOVE:**  We can break at this point, Your Honor.

5          **THE COURT:**  All right.  Thank you, sir.  You may step

6  down.  You're excused until Monday morning at 8:00 a.m.

7          **THE WITNESS:**  (Through the interpreter) okay.

8          **THE COURT:**  You stay step down and leave the

9  courtroom, sir.  Thank you very much.

10              (Witness left the courtroom.)

11              *      *      *      *      *

12

13              **CERTIFICATE OF REPORTER**

14

15          I certify that the foregoing is a correct *excerpt(s)*

16  from the record of proceedings in the above-entitled matter.

17

18  _____

19  Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

20          Saturday, March 9, 2019

21

22

23

24

25